

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2007

# Donis v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4271

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Donis v. Atty Gen USA" (2007). *2007 Decisions*. Paper 1502.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1502

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-4271

———


OTTONIEL HERNANDEZ-DONIS,
                                        Petitioner
                        v.


ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent


———


On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A96-225-665)
Immigration Judge:  Hon. Eugene Pugliese


———



Submitted Under Third Circuit LAR 34.1(a)
March 5, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and BRODY,[*] District Judge

Filed: March 9, 2007

———

OPINION

———


_____

[*] Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania sitting by designation.

SLOVITER, Circuit Judge

I.

Petitioner Ottoniel Hernandez-Donis seeks review of a final order issued by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review the petition based upon 8 U.S.C. § 1252(a)(1). For the reasons stated below, we will deny the petition.

Hernandez-Donis is a native and citizen of Guatemala. He grew up the son of a pastor in the Assembly of God church in the rural areas of the country, moving to a small village at age eight. Apparently the surrounding population was primarily Catholic and of indigenous origin, whereas his family was Evangelist and of mixed indigenous and European heritage. He testified that he and his family were "always attacked either by the guerrillas or by the army." A.R. at 89.[1]

In May 2001, at the age of twenty, Hernandez-Donis moved to Guatemala City in order "to better [his] life there" and escape the aforementioned mistreatment. A.R. at 91.

---

[1]Petitioner checked off the "based on religion" box on his application, and his testimony and affidavit made general reference to harassment and attacks his family experienced during his childhood, but he made no specific claim based on events occurring outside of Guatemala City in his appeal to the BIA or in the briefs to this court. We therefore deem waived any claims based on the treatment he and his family may have suffered during his childhood. Konan v. Att'y Gen. of the U.S., 432 F.3d 497, 500 n.2 (3d Cir. 2005).

He stated that he "was working there for a few years when . . . some of my friends who worked there . . . asked [him] to . . . become a member of one of the gangs ["mareros"] which rob and assault and rape." A.R. at 91. He explained that he knew these gang members because "they used to come over to [him] asking [him] for money," which he would give them out of fear. A.R. at 95. When he refused to join the gang, the gang members beat him, an attack which left physical scars and required hospital treatment. Following his recovery, Hernandez-Donis encountered "one or two" gang members again, who told him that since "they did not kill [him] before . . . they would kill [him] now." A.R. at 92. He testified it was useless to report the attack to the police because the gang was "mixed [up] . . . with the police and the guerrillas . . . [and] the truth is that since [the police] are mixed with [the gang members, the police] themselves are corrupt." A.R. at 95-96.

He came to the United States out of fear of further violence, and entered the United States in July 2003 without inspection. He was immediately detained in Arizona, but was released on his own recognizance and permitted to travel to New Jersey on condition that he report monthly to a deportation officer.[2] The Department of Homeland Security placed Hernandez-Donis into removal proceedings, and he conceded removability before the IJ.

---

[2]Although his affidavit asserted that he was "not sure" why the INS issued him documents in his father's name, "Hernandez-Garcia," A.R. at 202, Hernandez-Donis testified that he was afraid to give his real name to immigration officials when he was detained.

Hernandez-Donis applied for asylum, withholding of removal, and relief under the CAT. Following an evidentiary hearing the IJ issued an oral decision denying the application. The BIA affirmed the IJ's decision without opinion. This timely petition for review followed.

## II.

Where, as here, the BIA has not rendered its own opinion but rather has deferred to or adopted the opinion of an IJ, we review the decision of the IJ as the final agency decision. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004); Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc). We conduct our review under the substantial evidence standard, which requires us to examine the IJ's findings to determine whether they are "supported by evidence that a reasonable mind would find adequate." Dia, 353 F.3d at 249. We may reverse a finding of the IJ only when "no reasonable fact finder could make that finding on the administrative record." Id. at 249; Chavarria v. Gonzalez, 446 F.3d 508, 517 (3d Cir. 2006).

To qualify as a "refugee" who may receive asylum, an alien must establish that s/he is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear of persecution, an asylum applicant must "demonstrate a subjective fear of persecution through credible testimony that [his or] her fear is genuine." Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006).

4

The BIA and this court have defined persecution as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (citing Fatin v. INS, 12 F.3d 1233, 1240 (3d. Cir. 1993)). However, persecution does not "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin, 12 F.3d at 1240. The persecution alleged must be at the hands of the government or individuals the government is either unable or unwilling to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

The applicant has "the burden of showing that the persecution was *on account of* the applicant's race, religion, nationality, membership in a particular social group, or political opinion," Lukwago v. Ashcroft, 329 F.3d 157, 170 (3d Cir. 2003). In order for the persecution to qualify under the statute, "the persecutor must be motivated, at least in part, by one of the enumerated grounds." Id. at 170. There is no such requirement to qualify for relief under the CAT. See Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). However, an applicant for relief under the CAT bears the burden of proving through objective evidence that it is "more likely than not" that s/he would be tortured in the country to which the applicant would be removed. Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004) (quoting 8 C.F.R. § 1208.16(c)(2)).

Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . intimidating or coercing him or her or a third person, or for any reason based on discrimination of any

kind . . . ." 8 C.F.R. § 1208.18(a)(1). The applicant carries the burden of proving the torture would occur "with the consent or acquiescence of a public official or other person acting in an official capacity." Id.; see also Lukwago, 329 F.3d at 183.

The IJ found that the testimony of Hernandez-Donis was honest and credible, but concluded that he was ineligible for asylum or withholding of removal because he failed to show that he was persecuted on account of one of the five enumerated grounds provided in the INA. According to the IJ, Hernandez-Donis: "was subjected to violence because violence seems to be widespread in Guatemala, and people will extort money from him as they will extort money apparently from anyone who has money that can be extorted." A.R. at 64. The IJ stated further: "There is no political agenda for this group that I have been able to discern from this testimony or from this record, and the group does not seem to care what the political persuasion is of the respondent." Id.

The IJ's conclusion was supported by the evidence. Hernandez-Donis's testimony established that the gang members beat him for refusing to join their ranks and partake in their criminal endeavors. He did not show that the gang persecuted or will persecute him because of his political opinion, imputed or express. Assuming arguendo that the gang itself possessed some political agenda, the act of "not taking sides with [a] political faction" is not ordinarily "itself the affirmative expression of a political opinion." INS v. Elias-Zacarias, 502 U.S. 478, 479-80, 482-83 (1992) (noting the variety of apolitical reasons one might resist membership in a guerrilla organization, such as "fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian

6

life, to mention only a few," and upholding denial of asylum to applicant who claimed to have fled guerrilla forces attempting to recruit him, as record did not compel finding that guerrillas would persecute him based on applicant's political opinion rather than because of his refusal to join guerrillas).

Furthermore, it is settled that "random street violence" or "ordinary criminal activity" that is "motivated not by animosity" against a particular political position, "but rather by arbitrary hostility or by a desire to reap financial rewards. . . . does not rise to the level of persecution necessary to establish eligibility for asylum." Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001). Based on the evidence, a reasonable adjudicator would not be compelled to conclude that Hernandez-Donis was assaulted on account of his political opinion. Thus Hernandez-Donis has not satisfied the required burden of proof to show eligibility for asylum and, necessarily, the higher burden of proof to show withholding of removal.

Hernandez-Donis argues that the IJ erred in determining that he did not warrant relief under the CAT. The IJ concluded that the one instance of a physical attack upon him did not "rise to the level of torture." A.R. at 65. Hernandez-Donis did not dispute this particular conclusion in his brief, and "[i]t is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." U.S. v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). The issue of waiver aside, however, it was not unreasonable for the IJ to conclude that the past incidents he described, including efforts at extortion by the gang and an isolated physical assault, did not establish that "it

7

is more likely than not that he will be subject to torture by, at the instigation of, or with the acquiescence of a public official." Amanfi v. Ashcroft, 328 F.3d 719, 725 (3d Cir. 2003). While evidence of past torture can be considered in determining whether future torture is likely, see Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003), such an isolated physical attack by gang members did not involve the degree of "severe pain and suffering" contemplated as constituting torture. 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."); see also Lie, 396 F.3d at 536 ("[I]solated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, [are] not sufficiently severe to be considered persecution.") (emphasis added).

Hernandez-Donis argues that the IJ failed to consider the entire record, in particular the evidence that clandestine groups act in conjunction with, or with the silent acquiescence of, the Guatemalan government. He argues that he is entitled to protection under the CAT because he has a well-founded fear that, if returned to Guatemala, the clandestine gang that harassed, exploited, intimidated, threatened and beat him in the past will do so in the future with the knowledge or with the willful blindness of the government. However, as the Government argues in its brief, inasmuch as the IJ determined that Hernandez-Donis has failed to demonstrate that he is more likely than not to be tortured, it was not necessary for the IJ to address that argument.

III.

8

In conclusion, we find that the IJ's rulings were substantially supported by the record.   We will deny Hernandez-Donis's petition for review.